UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 08-3514-E CT

UNITED STATES OF AMERICA

vs.

ROSALIO VALDEZ,

                 **Defendant.**

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

                                Respectfully submitted,

                                R. ALEXANDER ACOSTA
                                UNITED STATES ATTORNEY

BY: _____
                                DANIEL LAWRENCE RASHBAUM
                                ASSISTANT UNITED STATES ATTORNEY
                                Court I.D. No. A5500952
                                99 N. E. 4th Street, 8th Floor
                                Miami, Florida  33132-2111
                                Tel:  (305) 961-9071
                                Fax: (305) 530-7950

# United States District Court

**SOUTHERN**      **DISTRICT OF**      **FLORIDA**

UNITED STATES OF AMERICA

V.

ROSALIO VALDEZ

## CRIMINAL COMPLAINT

CASE NUMBER: 08-3514-EGT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or around at least January 2008 through on or about November 20, 2008, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant ROSALIO VALDEZ did knowingly, in and affecting interstate and foreign commerce, recruit, harbor, transport, provide, and obtain by any means a person knowing that force, fraud, and coercion would be used to cause that person to engage in a commercial sex act, and benefitted financially from this conduct; in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 2.

I further state that I am a Special Agent with Immigration and Customs Enforcement, and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

*[signature]*
MILDRED LABOY
IMMIGRATION & CUSTOMS ENFORCEMENT

Sworn to before me, and subscribed in my presence,

NOVEMBER 20, 2008      at   MIAMI, FLORIDA
Date      City and State

EDWIN G. TORRES
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer      *[signature]*
     Signature of Judicial Officer

## AFFIDAVIT OF MILDRED LABOY

I, Mildred Laboy, having been first duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (hereinafter referred to as "ICE"). I have been employed with ICE since March 2003. Prior to that, I was employed with the United States Department of Justice, Immigration and Naturalization Service as a Special Agent. As a Special Agent, I have conducted numerous administrative and criminal investigations of individuals who have violated statutes relating to the immigration laws of the United States, including individuals involved in the smuggling and trafficking of human victims into the United States.

2. Because this affidavit is being submitted for the limited purpose of securing arrest warrants and a criminal complaint, I have not included each and every fact known to law enforcement concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause that **ROSALIO VALDEZ** violated Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 2, in that the Defendants did knowingly, in and affecting interstate and foreign commerce, recruit, harbor, transport, provide and obtain by any means a person knowing that force, fraud, and coercion would be used to cause that person to engage in a commercial sex act, and that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act, and benefitted financially from this conduct.

3. The statements contained in this affidavit are based in part upon the investigation that I have personally conducted; upon information provided to me by other law enforcement officers; and on my experience and background as a Special Agent.

## SUMMARY OF THE INVESTIGATION

### A. VICTIM 1

4.     In early 2008, a victim of human trafficking hereinafter referred to as Victim 1 began cooperating with law enforcement. Victim 1 described how in 1999, she was kidnaped by an individual in Mexico, who later became her "husband." She was then smuggled through the Mexican border and brought to Arizona and later transported to Queens, New York. There, she was repeatedly beaten and forced to work as a prostitute by her husband/trafficker. She had no freedom of movement whatsoever, and was closely watched by her husband and his associates. She attempted to escape several times, but was unsuccessful and severely beaten for her attempts. She also attempted to take her life on numerous occasions. Additionally, she described witnessing constant physical abuse of others who were working in the prostitution ring. She described how the traffickers would often kidnap these women's children; keep the children in Mexico with family members; and threaten the women that if they did not work as prostitutes, their children and families would be harmed.

5.     Victim 1 was arrested for prostitution several times in New York in 2000. After her third arrest, she attempted to take her life again. After this attempt, her husband sent her back to Mexico, only to find out that she was pregnant with her husband/trafficker's child. Upon hearing about her pregnancy, Victim 1's husband threatened to take the child away from her if she did not continue to work for him. She later was smuggled back into the United States by her husband and his associates. She worked odd jobs for her husband in New York and later was transported to Miami, Florida.

6.     While in Miami, Florida, her husband agreed to a divorce if she helped him with the

trafficking business. As a result, she became intimately aware of a prostitution/human trafficking ring in which illegal aliens were being housed and forced to prostitute themselves throughout South Florida. She described the housing and transportation of several women. Victim 1 described how there were numerous "stash" houses. A "stash" house is where the women were housed, but not where the actual prostitution occurs. Victim 1 also described how the women would be transported weekly to various brothels where they would prostitute. She said the victims would then give the money they earned to their traffickers. Victim 1 stated that she believed that some of the women were minors, and how most of the women were from Mexico.

7. On May 27, 2008, your undersigned drove Victim 1 in an attempt to identify locations utilized as places of prostitution and places where the prostitutes – a large majority of whom are illegal aliens – are being harbored by those who force them into prostitution. In the course of that investigation, Victim 1 identified the following residences, among others, as places of prostitution:

- **1160 SW 15th Avenue, Miami, FL**

The two Homestead locations were being run by her ex-husband in the Spring/Summer of 2008.

**B.   VICTIM 2**

8. On September 5, 2008, law enforcement encountered a minor victim (hereinafter referred to as "Victim 2"), who had been victimized by a prostitution/human trafficking ring associated with the one described by Victim 1.[1] Victim 2 was illegally smuggled into the United States by her "husband"/trafficker, TIMOTEO REYES-PEREZ, when she was 14 years old. She

---

[1] Also arrested with Victim 2 was another female who has since admitted to working as a prostitute in South Florida.

- 3 -

was initially taken to live in Queens, New York. Soon after, she was transported and housed in Atlanta, Georgia. In February 2008, she was brought to Miami, Florida. There she was housed but did not work as a prostitute until several months later. Ultimately, however, her husband, TIMOTEO REYES-PEREZ, forced her to begin working as a prostitute in the Spring/Summer of 2008. He would periodically threaten and beat her. Victim 2 describes how she was moved weekly from locations in Homestead, West Palm Beach, and Ft. Myers. On occasions, Victim 2 would ride up with the traffickers and other victims to different brothels in Florida. She described how other women were being forced in the same ways, and how the traffickers were threatening many of the women's families and children back in Mexico. Victim 2 stated that she often rode in a green van, which was driven by ARTURO ROJAS-GONZALEZ.

9. In October 2008, Victim 2 took law enforcement to several of the residences that she knew the traffickers were using as either brothels or "stash" houses. She identified several brothels and stash houses, some of which were also identified by Victim 1.

10. Victim 2 described the differences between the brothels and the "stash" houses. She stated that the "stash" houses were locations where the traffickers or associates of the traffickers lived and places where the victim women were sent for a couple of days to a week at a time. Once the women arrived at the "stash" house, the trafficker would receive phone calls from clients, and the women would be disbursed to prostitute at individual clients' houses. Notably, when describing the "stash" houses that Victim 2 resided in, she stated that those locations often had families living in them and, from the outside, appeared to be normal residences. The brothels were residences where the victim women were sent to live for a few days to a week at a time and service clients out of that particular location. At least one person at the residence or brothel actually resided there and

would watch over the girls.

11.  Victim 2 also provided information on several targets of this investigation, that corroborate the information given to law enforcement by Victim 1.

### C.   ARTURO ROJAS-GONZALEZ

13.  On June 23, 2008, law enforcement encountered three women and a male in a green Chevrolet Venture van (Tag Number 723-KUA) in Miami, Florida. The vehicle had been seen at several suspected stash houses. The male driver was ARTURO ROJAS-GONZALEZ. Ultimately, the vehicle was approached in Naples, Florida. Upon questioning, all three women claimed to be in their mid-twenties, but could not produce any documents showing their identities. The women seemed uneasy and had contradicting answers to most of the questions asked by law enforcement. All three women had small notebooks containing phone numbers and dates. Below the dates were tallies indicating how many customers they had seen on the particular date. Also found were antibiotics common in treating urinary tract infections. Based on my experience and training in investigating these types of cases, recordings of total number of customers or tallies and antibiotics found are commonly found on prostitutes. No arrests were made at that time.

14.  Victim 2 has since confirmed that ARTURO ROJAS-GONZALEZ is a human trafficker. She said that ROJAS-GONZALEZ transported her and other females to several brothels in South Florida. Indeed, she said that ROJAS-GONZALEZ arranged her first "job" in a brothel in West Palm Beach and transported her there from Miami, Florida. Victim 1 also confirmed that ROJAS-GONZALEZ is an individual who associated with her ex-husband in the prostitution ring.

15.  On October 27, 2008, law enforcement again encountered ROJAS-GONZALEZ. He was in the same green Chevrolet Venture van described above with another female ("MC").

ROJAS-GONZALEZ is illegally in the country, and was taken into immigration custody. MC is an illegal alien who was being transported by ROJAS-GONZALEZ (her "husband") from Ft. Myers to West Palm Beach. She admitted to working as a prostitute and being transported by ROJAS-GONZALEZ. MC said that she came across the Mexican border with ROJAS-GONZALEZ, and was scared to go back home. Found on her person was a small notebook that appears to reflect the number of customers by date. Victim 2 knows MC and has told law enforcement that she was transported to brothels in South Florida by ROJAS-GONZALEZ and others.

**D.    OTHER CORROBORATING INFORMATION**

16.    As part of this investigation, law enforcement has installed a Global Positioning System ("GPS") logger on the green Chevrolet Venture (Florida Tag Number 723-KUA) prior to ROJAS-GONZALEZ being encountered on October 27, 2008. The GPS logger does repeatedly place the green Chevrolet Venture at a residence where Victim 2 lived in Homestead, Florida, as well as some of the brothels that Victim 2 has identified.

17.    Victim 1 indicated that her husband was wiring money back to family in Mexico. This money was proceeds from prostitution. Victim 2 told law enforcement that the traffickers used a particular Western Union on 152nd Avenue and Sunset Drive in Miami, Florida. In October 2008, one of the suspected traffickers/transporters was arrested on immigration charges. Found on his person was Western Union receipts going to Mexico from the above stated Western Union location.

**E.    INFORMATION GIVEN BY VICTIM 1 & A CONFIDENTIAL INFORMANT PRIOR TO THE ARREST OF ROSALIO VALDEZ**

18.    Victim 1 stated that the 1160 SW 15th Avenue (hereinafter referred to as the "Target

- 6 -

Residence"), was being used as a stash house in early 2008. She identified an individual who she referred to as "El Charrito," as being a pimp who lives at the Target Residence and forces women to prostitute themselves. Victim 1 also stated that El Charrito drove a burgundy Nissan Altima. On June 11, 2008, your undersigned met with a confidential informant, who had been working with the Miami Dade Police Department for approximately one year. During that meeting, the confidential informant also identified the Target Residence as a stash house, and stated that the Target Residence was being run by a who she knew by the name El Charro. The confidential informant said that El Charro drove a red Nissan vehicle. ***Law enforcement has since learned that El Charrito or El Charro is ROSALIO VALDEZ.***

19. Throughout November 2008, law enforcement conducted periodic surveillance on the Target Residence. Law enforcement has observed a burgundy Nissan Altima at the Target Residence. Law enforcement also has identified, at the Target Residence, a male that fits the description of El Charrito/El Charro, as described by Victim 1 and the confidential informant. Additionally, law enforcement has observed several unidentified Hispanic females being dropped off at the Target Residence.

F. **SEARCH OF THE TARGET RESIDENCE & ARREST**

20. On November 19, 2008, the Target Residence was searched by law enforcement, pursuant to a search warrant. During that search, law enforcement found ROSALIO VALDEZ, a.k.a. "El Charro" and "El Charrito" at the residence. ROSALIO VALDEZ matched the descriptions of the pimp running the location, as identified by Victim 1 and the confidential informant. ROSALIO VALDEZ stated that only he and his nephew lived at the location, and that no females resided on the premises. However, found at the Target Residence were numerous pieces of luggage belonging

to several females who were not in the residence. Also found were passports belonging to females and approximately $2000 in United States currency. Additionally, ROSALIO VALDEZ gave consent to search his vehicle. He stated that he was the sole driver of the vehicle. Found in the vehicle was between 20-50 condoms and a commercial size bottle of lubricant.

## CONCLUSION

21. Based upon the above information, probable cause exists that **ROSALIO VALDEZ** violated Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 2, in that he did knowingly, in and affecting interstate and foreign commerce, recruit, harbor, transport, provide and obtain by any means a person knowing that force, fraud, and coercion would be used to cause that person to engage in a commercial sex act, and benefitted financially from this conduct.

FURTHER AFFIANT SAYETH NAUGHT

_____
Mildred Laboy
Special Agent, Immigration & Customs Enforcement

Sworn to me this
20th day of November, 2008.

_____
HON. EDWIN G. TORRES
MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA